FILED

2016 APR 11 PM 2: 18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 16- **SACR16-00043** |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 401(3): Contempt] |
| BRIAN JOSEPH PACIOS, <br> aka "Brian Barry," <br> aka "Brian Kelly," | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1341]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1.   The Making Home Affordable ("MHA") program, part of the Troubled Asset Relief Program ("TARP"), was created in 2009 to strengthen the housing market and help struggling homeowners avoid foreclosure in the wake of the nation's housing crisis.  The cornerstone of the MHA was the Home Affordable Modification Program ("HAMP"), which permanently reduced mortgage payments to affordable levels for qualifying buyers.  HAMP worked by encouraging

1  participating mortgage servicers to modify mortgages so struggling

2  homeowners could have lower monthly payments and avoid foreclosure.

3  Funded under TARP, HAMP provided monetary incentives for homeowners,

4  servicers, and investors to encourage successful mortgage

5  modifications.  HAMP had specific eligibility requirements for

6  homeowners and strict guidelines for servicers.  There was no charge

7  to apply for HAMP, and homeowners could access the program by

8  contacting their loan servicer or calling the "Homeowner's HOPE

9  Hotline" to speak with a U.S. Department of Housing and Urban

10 Development ("HUD") approved housing counselor.  HAMP was funded by

11 taxpayers.

12      2.   Defendant BRIAN JOSEPH PACIOS, also known as ("aka") "Brian

13 Barry," aka "Brian Kelly" ("PACIOS"), together with others known and

14 unknown to the United States Attorney, operated businesses promising

15 loan modifications to distressed homeowners through HOPE Services,

16 aka C.C. Enterprises, Inc., aka Trust Payment Center, aka Retention

17 Divisions, and HAMP Services, aka D.N. Marketing, Inc., aka Trial

18 Payment Processing, all of which were based in Orange County,

19 California.

20 B.   THE SCHEME TO DEFRAUD

21      3.   Beginning in or around 2014, and continuing to on or about

22 April 16, 2015, in Orange County, within the Central District of

23 California, and elsewhere, defendant PACIOS, together with others

24 known and unknown to the United States Attorney, knowingly and with

25 the intent to defraud, devised, participated in, and executed a

26 scheme to defraud distressed homeowners as to material matters and to

27 obtain money from distressed homeowners, by means of materially false

28

1    and fraudulent pretenses, representations, and promises, and the

2    concealment of material facts.

3         4.   The fraudulent scheme operated, in substance, in the

4    following manner:

5              a.   Through false and fraudulent statements and written

6    materials, defendant PACIOS attempted to induce and did induce

7    distressed homeowners facing foreclosure to pay trial payments to one

8    of his entities, including HOPE Services and HAMP Services, to obtain

9    loan modifications so the distressed homeowners could save their

10   homes from foreclosure.

11             b.   To obtain the money of distressed homeowners,

12   defendant PACIOS made material omissions and false promises and

13   statements, including, without limitation: (i) falsely promising

14   consumers mortgage loan modifications that would substantially reduce

15   their mortgage payments or interest rates or help consumers avoid

16   foreclosure; (ii) falsely claiming that he worked for a non-profit;

17   (iii) falsely claiming that he worked with government agencies; (iv)

18   falsely claiming that the distressed homeowners had been

19   conditionally approved for a loan modification; (v) falsely claiming

20   that trial payments sent to HOPE Services and HAMP Services were held

21   in an escrow account; (vi) omitting the material fact that the trial

22   payments were used for sales commissions and personal expenses of

23   defendant PACIOS and other co-schemers; and (vii) omitting the

24   material fact that defendant PACIOS had been by prohibited by a

25   permanent injunction from offering such services.

26        5.   To execute the aforementioned scheme, defendant PACIOS made

27   false and deceptive statements, and willfully caused others to make

28

3

false and deceptive statements, to the distressed homeowners,
including, without limitation, the following:

      a.    That HOPE Services was a non-profit;

      b.    That HOPE Services was authorized by the government to
help facilitate the loan modification process for homeowners;

      c.    That HAMP Services was a non-profit;

      d.    That HAMP Services was authorized by the government to
help facilitate the loan modification process for homeowners;

      e.    That HOPE Services worked with government agencies,
including HUD, Neighborhood Assistance Corporation of America
("NACA"), and MHA;

      f.    That HAMP Services worked with government agencies,
including HUD, NACA, and MHA;

      g.    That a loan modification had been conditionally
approved that would lower the distressed homeowner's monthly payments
but the distressed homeowner needed to make three trial payments
before the loan's terms would be modified;

      h.    That trial payments sent to HOPE Services were placed
in an escrow account until the loan was modified;

      i.    That trial payments needed to be sent to HOPE Services
by a certain date to remain eligible for the loan modification;

      j.    That trial payments sent to HAMP Services were placed
in an escrow account until the loan was modified; and

      k.    That trial payments needed to be sent to HAMP Services
by a certain date to remain eligible for the loan modification.

    6.    In carrying out the scheme to defraud, defendant PACIOS
failed to disclose to, and concealed from, the victims the following
material facts, among others:

1          a.    That defendant PACIOS would use the distressed
2    homeowners' trial payments to pay sales commissions and for his own
3    personal use, including paying for defendant PACIOS's daily living
4    expenses and trips to Las Vegas, and would not place them in an
5    escrow account;

6          b.    That neither defendant PACIOS nor any of his entities,
7    HOPE Services and HAMP Services, were affiliated with or working with
8    any official government agency;

9          c.    That the deadlines set by HOPE Services and HAMP
10   Services were artificial, were created by a representative at HOPE
11   Services or HAMP Services to put pressure on the distressed homeowner
12   to respond, and were not created by a government agency or any loan
13   servicer; and

14         d.    That on or about February 28, 2013, in Federal Trade
15   Commission v. Lakhany et al., SA CV 12-337-CJC, the district court in
16   the Central District of California entered a permanent injunction
17   enjoining defendant PACIOS from, among other things, advertising,
18   marketing, promoting, offering for sale, or selling any mortgage
19   assistance relief product or service, or debt relief product or
20   service as well as assisting others engaged in such conduct.

21        7.    By devising, executing, and participating in the above
22   scheme, defendant PACIOS, together with others known and unknown to
23   the United States Attorney, induced and attempted to induce over 400
24   distressed homeowners to distribute to him funds of over $2.7
25   million.

26   C.   USE OF MAILS

27        8.    On or about February 3, 2015, within the Central District
28   of California, and elsewhere, for the purpose of executing the scheme

1   to defraud, defendant PACIOS, together with others known and unknown
2   to the United States Attorney, knowingly caused a FedEx package from
3   Laguna Hills, California, addressed to C.J.G. at an address in Mt.
4   Airy, Maryland, to be deposited with and to be delivered by a
5   commercial interstate carrier, according to the directions thereon.

COUNT TWO

[18 U.S.C. § 401(3)]

On or about May 28, 2014, in Orange County, within the Central District of California, knowing that there was a clear and definite court order, dated February 28, 2013, in <u>Federal Trade Commission v. Lakhany et al.</u>, Case No. SA CV 12-337-CJC, precluding him from advertising, marketing, promoting, offering for sale, or selling any mortgage assistance relief product or service, or debt relief product or service, or assisting others engaged in such conduct, defendant BRIAN JOSEPH PACIOS, also known as ("aka") "Brian Barry," aka "Brian Kelly," willfully disobeyed and resisted that order by soliciting approximately $3,402.96 in cashier's checks from distressed homeowner J.P.C. for a home loan modification.

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

DENNISE WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

SANDY LEAL
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

VIBHAV MITTAL
Assistant United States Attorney
Santa Ana Branch Office