UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO: 0973-8:16CR00043-1 |
| ) | |
| ) | |
| BRIAN JOSEPH PACIOS, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S APPEAL OF THE DENIAL OF HIS
## CARES ACT REQUEST SEEKING HOME CONFINEMENT

COMES NOW, Brian Pacios, Defendant in the above styled criminal action, and pursuant to the provisions of 28 CFR 571.61, 18 U.S.C. § 3582(c)(1) as amended by the First Step Act (P.L. 115-391), the applicable provisions of the CARES Act of 2020, as well as all other applicable portions of the First Step Act, files this Appeal of the denial of his CARES Act Request seeking Home Confinement by the Warden at FPC Yankton.[1]

The request made by the Defendant was based on the fact that he suffers from significant breathing problems as the result of Asthma and is at high risk in the prison setting for serious and debilitating medical problems. The sole basis of the Warden's denial of the Defendant's request was not based on the substantive merits of the Defendant's medical condition[s] but was instead based purely on procedural grounds.[2]

---

[1] The Administrative Remedy filed by the Defendant can be found in his Inmate Central File. It has been assigned Case No.: 1141121-F1. At the time of filing the Defendant has completed 25% or more of his net sentence as required by the Cares Act and the Department of Justice.

[2] Specifically, the Warden determined that the Defendant had not completed 25% of his net sentence and that he had more than 18 months left remaining on his sentence. Neither of these points are accurate. Furthermore, even if the Defendant had more than 18 months remaining on his sentence, that standard is no longer being utilized by the Bureau of Prisons because it was determined to be an arbitrary guideline which bore no rational relationship to the issue of medical release. See Generally *Brodie v. Pliler*, 22 Civ. 3821 (LGS) (S.D.N.Y. Nov. 7, 2022).

The Defendant contends, in whole or in part, that he has met all the relevant legal and/or administrative standards necessary to be granted transfer to Home Confinement and that his request was (1) summarily denied and/or ignored without proper investigation and/or consideration by the Warden, (2) was arbitrary and/or capricious and has violated his Constitutional right to both substantive and procedural due process[3], and/or (3) was in clear error given the facts in this case. Therefore, the Defendant respectfully requests that this Honorable Court review all of the facts and circumstances concerning the matter and modify his sentence to allow him to serve the remainder on Home Confinement.[4]

## THE RELEVANT GUIDELINES

Beginning in late March 2020, the Office of the United States Attorney General issued a Memorandum to the Bureau of Prisons requiring the use of home confinement in appropriate cases under the CARES Act by identifying individuals who should be considered for transfer to Home Confinement by moving them out of the institutional setting. Subsequent Memorandums were issued by the Attorney General over the next thirteen months that establish the parameters that should affirmatively be implemented by the Bureau of Prisons concerning these situations. The Defendant believes that all of these guidelines provide a clear basis for his request[s] for transfer to Home Confinement. All of this information can be found in the filing that was made

---

[3] The Defendant contends he has the right to seek a direct appeal to this Court based on the actions of the Warden and BOP and should not be required to exhaust his administrative remedies. It is clear here that the decision to deny the Defendant's request places him at extreme risk for the contraction of COVID-19 and/or its variants in the prison setting. Further delay in this case can potentially have significant adverse effects on the health of the Defendant.

[4] All Courts of Appeals to decide the issue—plus a "majority of district courts"—have held that U.S.S.G. § 1B.13 is no longer an applicable policy statement when a district court considers a defendant-filed § 3582(c)(1)(A) motion. *See United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020); *United States v. Jones*, 2020 U.S. App. LEXIS 36620 (6th Cir. Nov. 22, 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. McGee*, No. 20-5047, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021); *United States v. Shkambi*, No. 20-40543, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021); *United States v. Aruda*, No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021).

by the Defendant to the Warden and is therefore part of the record in this case. A summary of each directive issued by the Department of Justice is presented below[5]:

### March 26, 2020: Factors for Transfer and/or Release

In its initial Memorandum, dated March 26, 2020, the Department of Justice recognized the short as well as long-term threat of Covid inside the prison setting and instructed the Bureau of Prisons to identify which inmates should be granted home confinement. It also provided the Bureau of Prisons with a list of specific reasons to be considered in making that determination. These factors included, but were not limited to, the vulnerability of the inmate to Covid, the security level of the facility where the inmate is being held, the inmate's conduct while in prison, the inmate's PATTERN assessment risk score, the ability to provide a clear and verifiable re-entry plan and an assessment of the danger posed by the inmate to the community should they be released. This directive also mandated, in relevant part, giving first priority to those inmates who are located in either low and/or minimum-security facilities.

### April 3, 2020: Time is of the Essence

On April 3, 2020, the Department of Justice issued additional clarification concerning its criteria concerning either transfer to home confinement and/or early release via a reduction in sentence to affected prisoners. In that Memorandum, the Department of Justice and Attorney General ordered the Bureau of Prisons to be extremely proactive in making the assessments on who should be transferred and/or released stating clearly that time was of the essence in transferring medically susceptible inmates to home release.

### April 13, 2021: Specific Criteria for Transfer/Release

On April 13, 2021, the Department of Justice gave the Bureau of Prisons specific guidance identifying the requirements that should be considered in assessing who should be

---

[5] All of these Memorandums are part of the record and can be found in the request[s] for relief which was submitted to the Warden.

3

transferred to home confinement under these circumstances. These requirements included, in relevant part:

(1) a review of an inmate's disciplinary history for the past twelve [12] months;

(2) verifying that the inmate has a viable release plan;

(3) verifying that the inmate has no current and/or prior offenses which were sex or terrorist related;

(4) confirming that the inmate does not have a detainer of any kind;

(5) verifying that the inmate is located in a low-security setting;

(6) determining that the inmate has a low or minimum PATTERN score;

(7) verifying that the inmate has not been involved in violent and/or gang-related activities while incarcerated; and,

(8) confirming, for the purposes of this request, that the inmate has served 25% or more of their net sentence.

### Presidential Executive Order 14074-May 25, 2022

In addition to the directives of the Department of Justice, on May 25, 2022, President Biden issued a comprehensive Executive Order concerning the Bureau of Prisons and its operations that, in part, expounded on its obligation to address the spread of Covid.

As part of that Order, the President clearly made it a priority for the Bureau of Prisons to identify the number of individuals who meet the eligibility requirements under the CARES Act for transfer to home confinement via (Public Law 116–136), the First Step Act, 18 U.S.C. § 3582(c), 18 U.S.C. § 3622, and 18 U.S.C. § 3624.[6] This Order also expressly required the Bureau of Prisons to take immediate action to mitigate the impact and spread of COVID in the prison setting by either transferring and/or releasing eligible prisoners from their respective

---

[6] The text of the Executive Order and the Order itself are subject to judicial notice by the Court.

institutions. [See C.F.R. Volume 78 No. 104, May 31, 2022; See also https://www.govinfo.gov/content/pkg/FR-2022-05-31/pdf/2022-11810.pdf].

## II. STATEMENT OF REASON[S]

In this case, the Defendant is a first-time, non-violent offender who has complied with everything required of him during his case, pre-trial supervision as well as during his incarceration to date. He has completed the comprehensive Residential Drug & Alcohol Program while in prison. He has taken full responsibility for his actions and presents no threat of any kind to the community. He has significant ties to the community in which he lives and has a solid release plan. He is married and has a stable and loving home environment. Furthermore, the offense to which the Defendant plead guilty does not disqualify him in any way from consideration for transfer to Home Confinement.

The Defendant contends that he provided sufficient information to the Warden to show that he is at high risk in the prison setting as required under the CARES Act as well as according to the Department of Justice and the Federal Bureau of Prisons rules, regulations and guidelines and should be transferred to Home Confinement. In this regard, the Defendant suffers from the following medical conditions:

### Asthma & Covid Complications

The Defendant suffers from moderate to severe asthma that has resulted in significant breathing issues. As the Court is well aware, asthma is a condition in which your airways narrow and swell and produce extra mucus. This is a chronic (long-term) condition that makes breathing very difficult. The Defendant's asthma requires the use of an inhaler in order to breathe effectively.

Since the Defendant has been in the custody of the Bureau of Prisons, he contracted COVID-19 which took a severe physical toll on him. He has experienced significant headaches and fatigue. He can only participate minimally in physical activities. Since suffering from

5

COVID, he has had more asthma attacks. In fact, these attacks are so significant that the Medical Department prescribed a powdered inhaler to help prevent future attacks. This is in addition to the Albuterol Inhaler that he also uses. Given these facts, it is clear that the Defendant is at a substantially elevated risk in the prison setting for not only the contraction of another case of the disease but would likely suffer significant complications if he were to be reinfected.

According to the CDC, people who suffer from asthma and who contract COVID-19 are much more likely to have a severe case with the potential for significant complications. [See Generally CDC Guidelines, "People with Certain Medical Conditions", https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people- with-medical-conditions.html https://www.cdc.gov/coronavirus/2019- ncov/need-extra-precautions/people-with-medical-conditions.html; See Also CDC Asthma Specific Guidelines: https://www.cdc.gov/coronavirus/2019-ncov/need-extra- precautions/asthma.html].

In the Defendant's case, he falls squarely in this category of individuals who are more likely to suffer such a severe case. The Defendant contends, therefore, that the interest of justice would be much better served by allowing him to spend the remainder of his sentence in home confinement than remain at high risk inside the prison setting.

**The Spread of the BA.5 Covid Variant**

The current spread of Covid and its variants, including the most recent strain known as BA.5, clearly demonstrate that the danger of infection from Covid has not abated and has in fact accelerated. According to the CDC, the new Omicron variant spreads much more easily than the original SARS-CoV-2 virus and the Delta variant and is much more contagious. [See CDC Guidelines: "Omicron Variant: What you Need to Know https://www.cdc.gov/coronavirus/2019-ncov/variants/omicronvariant.html#:~:text=The%20Omicron%20variant%20likely%20will,or%20 don't%20have%20symptoms].

Given the way in which Covid-19 spread through the Bureau of Prisons, there can be no question that the risk of contracting it in the Defendant's case is very high. Based on these facts, the circumstances in this case clearly warrant relief for the Defendant. Given the severity of the Defendant's severe asthma, not to mention the spread of the BA.5 Covid variant, it is clear that remaining confined in the prison setting places the Defendant squarely at significant health risk and puts him in the category of those inmates who should be transferred to home confinement based on the cumulative directives of the Department of Justice.

### III. ARGUMENT

#### A. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES EXIST IN THIS CASE WHICH JUSTIFY A MODIFICATION OF SENTENCE

Pursuant to 18 U.S.C. § 3582, a court may modify a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission has defined what constitutes "extraordinary and compelling reasons" in the U.S. Sentencing Guideline § 1B1.13. "Extraordinary and compelling reasons" for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13, cmt., n.1(A)(ii).

As the Court is well-aware, the coronavirus pandemic is a global crisis which is causing death and illness within the prison system due to the inherent impossibility of social distancing, the limited ability of prison officials to take preventative measures and the difficulties in providing and receiving adequate medical treatment in confinement.

District courts across the country have recognized that ordering release or home confinement pursuant to 18 U.S.C. § 3582 is warranted when an inmate with specified underlying medical conditions is faced with incarceration during this COVID-19 health crisis.[7] Several of these decisions have clearly determined that transfer to home confinement or release under the CARES Act is appropriate given the set of similar medical conditions that affect the Defendant in this case.[8]

In this case, the record is clear that Defendant meets all of the criteria necessary to be granted a modification of his sentence. The Defendant presents no danger to the community. He is a first time, non-violent offender. Placing him at such high risk of serious bodily harm inside the prison setting substantially diminishes his ability to provide self-care within the environment of a correctional facility.

### B. RELEASE TO HOME CONFINEMENT IS JUSTIFIED IN THIS CASE

When considering a sentencing modification request, the Court must consider the sentencing factors of 18 U.S.C. § 3553(a) and must also find that a sentence modification is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement that the sentence modification be consistent with U.S.

---

[7] *United States v. Muniz*, No. 09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."); See Also *United States v. Campagna*, No. 16-cr-78-01, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify the Defendant's sentence . . . .").

[8] These types of cases are relatively new to the courts. Here are some examples from other jurisdictions: See Generally *United States v. Jacquel Davon Owens*, USDC-Eastern District of Michigan, 2020 U.S. Dist. Lexis 3, decided September 10, 2020;[8]; *United States v. Fields*, USDC-Eastern District of Michigan, September 10, 2020, Case No.: 12-CR-20274; *United States v. Saladrigas*, 461 F. Supp. 3d 652, USDC-Eastern District of Michigan, May 13, 2020, Case No.: 13-20913-1.

8

Sentencing Commission policy "is essentially already met if "extraordinary and compelling reasons" exist as defined by that policy." See *United States v. Ebbers*, 2020WL91399, at *6 (S.D.N.Y. Jan. 8, 2020). The only remaining consideration is the policy statement's requirement that the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.* Although litigation concerning these issues is relatively new given the recent nature of the CARES Act, there have been many recent court cases which demonstrate that transfer to home confinement would be warranted in the Defendant's situation.

In *United States v. Gorai*, Case No. 2:18-CR-220 JCM (CWH) (D. Nev. Apr. 24, 2020), Mr. Gorai sought release to home confinement based on having asthma. The Court determined that Mr. Gorai's asthma fell squarely within the list of preexisting conditions that the CDC had established and that as a result, he was at greater risk of illness in the prison setting. The Court also determined that the Bureau of Prisons was not able to attend to his medical needs while incarcerated. In his case, Mr. Gorai's sentence of 57 months was converted to time served.

Similarly, in *United States v. Hernandez*, 451 F. Supp. 3d 301 (S.D.N.Y. 2020), Mr. Hernandez suffered from non-severe asthma. The Court found that even though his symptoms were not severe, that his conditions fell within those authorizing his release and reduced his 24-month sentence to credit for time served.

In *United States v. Alvarado*, 462 F. Supp. 3d 948 (D. Minn. 2020), Mr. Alvarado needed the use of an inhaler on a regular basis to control coughing, wheezing or shortness of breath. The Court found this condition warranted relief. The Court ordered Mr. Alvarado released from custody and he served the remainder of his sentence on supervised release at home.

These are just a few cases relating to medical conditions almost exactly the same as the Defendants in which transfer or release of some kind has been granted. This makes perfect sense in light of the current state of the law. There are also many other cases that demonstrate that this kind of release is warranted and that the same decision should be reached here.

Given the logic in <u>Gorai</u>, <u>Hernandez</u> and <u>Alvarado</u>, supra, as well as the Guidelines established by the Department of Justice, the record is clear that the Defendant falls in this category and should be transferred to Home Confinement.

**Specific requirements for Transfer and/or Release**

The final matter to be addressed is the requirements by the Department of Justice that must be met in order to qualify for transfer to home confinement. The Defendant clearly meets all of them. The key ones are outlined below:

**Staff review of the Defendant's institutional discipline history for the last 12 months.**

The Defendant has not had any disciplinary issues during his time in confinement. This can be verified through the BOP records at FPC Yankton. This can also be confirmed by a review of the Defendant's Central File as well.

**Individuals who do not have a disciplinary infraction may receive more favorable treatment.**

The Defendant completely and fully meets this requirement. His conduct throughout his incarceration has been excellent. He has completed all of the work and programming that has been required of him by the staff. He has also completed the comprehensive Residential Drug & Alcohol Program while in prison. This can be verified by a review of the Defendant's educational records at FPC Yankton. As a result, there is no question that the Defendant should receive more favorable treatment.

**The Defendant must demonstrate a verifiable release plan.**

The Defendant has a verifiable and acceptable release plan. He has a place to live when released. The Defendant is married and has a solid family relationship. He also has a strong foundation in the community[9]. In addition, as part of this release plan, he will be able to obtain

---

[9] If there are questions about the Defendant's character and connection to the Community it can review the significant number of character reference letters that were submitted on his behalf prior to the time of his sentencing. These should be in the Court's records.

any health insurance required by either the Bureau of Prisons and/or Probation services. He will also have the ability to work and have transportation as needed.

**The Defendant must have a low or a minimum-security rating.**

The Defendant clearly meets this requirement as well. This information can be verified in his Pre-Sentence Report. This document was filed with the Court and is also on record with the Bureau of Prisons. Furthermore, a review of the Defendant's PATTERN Score and other documents on file with this institution will demonstrate that he fully and completely meets criteria.

**The Defendant must not have a current detainer.**

The Defendant is a first time offender and does not have a detainer or hold of any kind. This information can be verified in the Defendant's Pre-Sentence Report. This document was filed with the Court and is also on record with the Bureau of Prisons. It can also be verified as well as through the United States Marshall's service.

**The Defendant must not have any history of gang-related acts or a history of violence.**

The Defendant has never been involved in any gang related acts or had a history of violence of any kind. This information can be verified in his Pre-Sentence Report. This document was filed with the Court and is also on record with the Bureau of Prisons.

**The Defendant must have served 25% or more of his net sentence.**

The Defendant contends, based on his calculations, that he has completed 25% of his net sentence as defined by the BOP. This includes not only time the Defendant has served at FPC Yankton but also includes the earned time credits which he has accumulated through the First Step Act.

## IV. CONCLUSION

It is clear here, that the Warden and/or BOP officials failed to properly look into the claims raised by the Defendant in his request for transfer to Home Confinement based solely on procedural grounds that were not accurate. There is also simply no evidence whatsoever that the BOP properly evaluated the Defendant's request or considered his medical condition and this certainly makes it appear that the decision of the Warden was not only arbitrary but also capricious. It has also served to deny the Defendant his rights to both substantive and procedural due process in this case. Furthermore, the Defendant has provided "extraordinary and compelling reasons" for his transfer to Home Confinement as provided for by law.

This is underscored by the fact that the primary medical condition[s] which the Defendant has are not only considered significant medical markers for serious and possibly fatal side effects of contracting COVID and/or its variants but are also the types of underlying health conditions which place him at a very high and elevated medical risk while in the prison setting.

The Defendant has also clearly met all of the criteria necessary to be transferred to Home Confinement as required by the Department of Justice. He has significant medical issues that place him at high risk in the prison setting. He has a verifiable release plan. He is not a threat of any kind to the community. Clearly justice would be best served by allowing the Defendant to transfer the location of his confinement from prison to his home where he can serve out the rest of his sentence.

Therefore, based on the logic in the *Gorai*, *Hernandez* and *Alvarado* cases referenced above, as well as the Guidelines established by the Department of Justice, the provisions of 28 CFR 571.61, 18 U.S.C. §3582(c)(1) as amended by the First Step Act (P.L. 115-391), the applicable provisions of the CARES Act of 2020, the Bureau of Prisons Program Statements, the substance of Presidential Executive Order 14074, all other applicable portions of the First Step

Act and the Memorandums of the Department of Justice, the Defendant respectfully requests that this Court grant his appeal and enter an Order modifying his sentence to allow him to serve it by transferring his place of confinement to his home so that he be placed on Home Confinement

Respectfully Submitted, this 12th day of January, 2023.

_____
Brian Pacios, Pro Se
Register No.: 78367-112
FPC Yankton

Acios
33667-112
Aton
Wilson Camp
700
SD 57078

Clerk, United States District Court
Central District of California
350 W 1st Street - Suite 4311
Los Angeles, CA 90012-4565

CV

JAN 19 2023

7021 2720 0002 0375 8298

CERTIFIED MAIL

